

**IT IS ORDERED as set forth below:**

**Date: October 18, 2019**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

.**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| JAMES DANIEL WISNER, | CASE NO. 16-59003-BEM |
| Debtor. | |
| | CHAPTER 7 |
| THE PIEDMONT BANK, | |
| Plaintiff, | |
| | ADVERSARY PROCEEDING NO. |
| v. | 16-5222-BEM |
| JAMES DANIEL WISNER, | |
| Defendant. | |

**O R D E R**

This matter comes before the Court on Defendant Daniel Wisner ("Defendant")'s *Motion for Summary Judgment* (the "Motion"), filed May 6, 2019 and amended on September 23, 2019. [Docs. 31, 43]. Plaintiff, The Piedmont Bank ("Plaintiff"), commenced this proceeding by filing its *Complaint to Determine Dischargeability* (the "Complaint") [Doc. 1] on September

15, 2016. In the Motion, Defendant seeks summary judgment on each of the three counts of the Complaint. Plaintiff asserts that the debt owed to it should be excepted from discharge in Counts I and II for "actual fraud" under 11 U.S.C. §§ 523(a)(2)(A) and (a)(2)(B) and in Count III under 11 U.S.C. § 523(a)(6).

Plaintiff alleges in the Complaint that Defendant fraudulently transferred $630,000 to an investment vehicle when Plaintiff had an outstanding judgment against him, and participated in the sale of the assets of a business thereby wasting the stock of the business and violating a court order.

This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons set forth below, the Motion will be granted in part and denied in part.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is governed by Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56, which provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings to defeat summary judgment. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510 (citations omitted); *see* Fed. R. Civ. P. 56(c)(1). Rather, the nonmoving party must present

2

specific facts supported by evidence that demonstrate there is a genuine material dispute. *Hairston v. Gainesville Sun Publ'g. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). When the material facts are not in dispute, the role of the Court is to determine whether the law supports a judgment in favor of the moving party. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

In deciding a motion for summary judgment, the Court views the evidence and reasonable inferences in favor of the nonmoving party. *Gray v. Manklow (In re Optical Tech., Inc.)*, 246 F.3d 1332, 1334 (11th Cir. 2001). Accordingly, to prevail on the Motion, Defendant must identify the pleadings, discovery materials, or affidavits that show an absence of genuine issues of fact material to claims under §§ 523(a)(2) and (a)(6). Conversely, Defendant will not prevail if Plaintiff identifies facts, supported by evidence and reasonable inferences, that demonstrate a dispute as to a material fact.

## II. FACTS

Bankruptcy Local Rule ("Local Rule") 7056-1 requires respondents to "attach to the response a separate and concise statement of material facts, numbered separately, as to which the respondent contends a genuine issue exists to be tried" and further provides that "[a]ll material facts contained in the moving party's statement that are not specifically controverted in respondent's statement are deemed admitted." Bankr. L.R. N.D. Ga. 7056-1(a)(2). Defendant filed his *Statement of Material Facts That Are Not in Dispute* (the "SMF") on May 6, 2019. [Doc. 33]. Plaintiff filed a response to the SMF ("Pl.'s Resp.") that admitted certain facts, denied others, and added additional alleged facts that it asserts are disputed. [Doc. 38]. The following facts are not in dispute if identified by a citation to the SMF and Pl.'s Resp. or to the Complaint and Answer. Additional facts alleged by Plaintiff are also included below and are followed solely by citation to Pl.'s Resp.; the additional facts are not necessarily undisputed.

3

On or about July 1, 1987, Defendant acquired 540 of the 600 total outstanding shares (90%) of stock in Atlanta Arms & Ammo, Inc. ("AA&A"). [SMF ¶ 1; Pl.'s Resp. ¶ 1]. On or about February 6, 2008, Big 5 Enterprises, LLC ("Big 5") executed and delivered that certain Real Estate Note in the original principal amount of $4,980,000 in favor of Plaintiff, as last modified by the Seventh Modification of Real Estate Note dated January 21, 2011 (as modified, the "Note"). [SMF 33 ¶ 2; Pl.'s Resp. ¶ 2]. Defendant executed an Unconditional Guaranty of Payment and Performance of the Note (the "Guaranty") on January 21, 2011. [SMF ¶ 3; Pl.'s Resp. ¶ 3; Declaration Pursuant to 28 U.S.C. § 1746 of James Daniel Wisner, Ex. 1 (Doc. 32)[1]].

On March 28, 2012, Defendant, Dr. Jeffrey Curtis, and Charles Scott Seymour formed Caribou Investments, LLC ("Caribou") as an investment vehicle created under the laws of the State of Delaware. [SMF ¶ 4; Pl.'s Resp. ¶ 4]. Caribou is an investment vehicle for the purpose of enabling the members to invest in closely held operating companies and real estate investments. *Id.*

On June 22, 2012, Plaintiff filed a complaint for breach of contract (the "Superior Court Complaint") styled *The Piedmont Bank v. Big 5 Enterprises, LLC, James D. Wisner, William Abbate, and Jeffrey V. Curtis*, Case No. 12-1361-5, Superior Court of Walton County, later transferred to Newton County as Case No. 2013-CV-496-5 (the "Superior Court Contract Case"). [SMF ¶ 5; Pl.'s Resp. ¶ 5]. The Superior Court Complaint was filed to enforce the Note and Guaranty. [Complaint ¶ 6; Answer ¶ 6]. The Superior Court Complaint contained no allegation that the Note and Guaranty were procured by (i) fraud, false pretenses, or false representations, or (ii) an intentional misrepresentation respecting Defendant's financial condition on which Plaintiff relied. [SMF ¶ 6; Pl.'s Resp. ¶ 6].

---

[1] Hereinafter, "Def. Dec."

4

On June 13, 2013, in the Superior Court Contract Case, Plaintiff submitted its "Plaintiff's Statement of Undisputed Facts and Theory of Recovery" (the "Statement"), in conjunction with a motion for summary judgment. [SMF ¶ 8; Pl.'s Resp. ¶ 8; *see* Def. Dec. Ex. 2]. The Statement contains no allegation that the Note and Guaranty were procured by (i) fraud, false pretenses, or false representations, or (ii) an intentional misrepresentation respecting Defendant's financial condition on which Plaintiff relied. [SMF ¶ 9; Pl.'s Resp. ¶ 9].

On July 1, 2013, the Operating Agreement for Caribou was amended and restated to admit a new member, W. David Everett. [SMF ¶ 7; Pl.'s Resp. ¶ 7]. Caribou remained an investment vehicle for the purpose of enabling the members to invest in closely held operating companies and real estate investments. *Id.*

On August 22, 2013, the Superior Court entered a "Final Order Granting Plaintiff's Motion for Summary Judgment" (the "Final Order") resolving the Superior Court Contract Case. [SMF ¶ 9; Pl.'s Resp. ¶ 9]. The Final Order contains no finding or determinations that the Note and Guaranty were procured by (i) fraud, false pretenses, or false representations, or (ii) an intentional misrepresentation respecting Defendant's financial condition on which Plaintiff relied. [SMF ¶ 10; Pl.'s Resp. ¶ 10]. Judgment was entered against Defendant and others for the principal amount of $4,793.670.81, plus interest, taxes paid by Plaintiff, late charges, and attorney fees. [Complaint ¶ 7; Answer ¶ 7].

On October 2, 2013, Plaintiff filed an action in the Superior Court of Newton County styled *The Piedmont Bank v. James D. Wisner, Atlanta Arms & Ammo, Inc., and Atlanta Arms & Ammo, LLC*, Case No. 2013CV1854-5 (the "AA&A Action") for the levy of shares Defendant owned in AA&A. [SMF ¶ 11; Pl.'s Resp. ¶ 11; Complaint ¶ 9; Answer ¶ 9]. In paragraph 9 of the petition in the AA&A Action, Plaintiff states that Defendant "has an

5

ownership in Defendants AA&A, Inc. and AA&A, LLC." [Pl.'s Resp. ¶ 27; Affidavit of Chris Elsevier Ex. 1 (Doc. 37)[2]]. On November 12, 2013, the defendants in the AA&A Action filed their answer to the petition. [Pl.'s Resp. ¶ 28; Pl. Dec. Ex. 2]. Plaintiff alleges that, in their answer, the defendants in the AA&A Action unequivocally denied that Defendant had an ownership interest in AA&A, Inc. and AA&A, LLC. [Pl.'s Resp. ¶ 29]. Plaintiff states that, on January 23, 2014, it served discovery on the AA&A Action defendants specifically inquiring about Defendant's ownership interest in AA&A and AA&A, LLC, as well as any other entity. [Pl.'s Resp. ¶ 30; Pl. Dec. Ex. 3].

On February 6, 2014 (the "Effective Date"), AA&A, as Seller, and Defendant, as Shareholder, executed an Equipment Purchase Agreement (the "Sale Agreement") pursuant to which AA&A sold certain equipment itemized on Exhibit "A" of the Sale Agreement ("Acquired Assets") to Hairy and Baxter, LLC ("H&B"), for a stated purchase price of $204,770 (the "Purchase Price"). [SMF ¶ 12; Pl.'s Resp. ¶ 12]. The parties dispute whether H&B was an insider of Defendant and whether the Purchase Price exceeded the appraised value of the Acquired Assets. [SMF ¶ 13-14; Pl.'s Resp. ¶ 13-14].

Section 2(c) of the Sale Agreement provides that the closing will take place on April 1, 2014. The Sales Agreement further provides: "Notwithstanding the foregoing, the purchase and sale of the Acquired Assets under this Agreement shall be deemed to have taken place on the Effective Date." [SMF ¶ 16; Pl.'s Resp. ¶ 16]. The Purchase Price was paid to AA&A on the Effective Date and deposited into AA&A's account on the Effective Date. [SMF ¶ 17; Pl.'s Resp. ¶ 17]. Defendant took no affirmative steps nor executed any additional documents to consummate the transaction contemplated under the Sale Agreement after the Effective Date. *Id.*

---

[2] Hereinafter, "Pl. Dec."

6

Plaintiff asserts that, on February 20, 2014, in Defendant's response to Plaintiff's interrogatories (the "Discovery Responses"), Defendant admitted that he owned 90% of AA&A and 100% of AA&A, LLC; but that he failed to disclose his ownership interest in Caribou. [Pl.'s Resp. at ¶ 31; Pl. Dec. Ex. 4].

At some point, Defendant received a distribution of $630,000 from AA&A. [Complaint ¶ 15; Answer ¶ 15]. Plaintiff alleges, and Defendant denies, that this distribution was received by Defendant the day before he served his Discovery Responses, and that he immediately transferred it to Caribou. [Pl.'s Resp. ¶ 41]. In any event, on February 26, 2014, Defendant deposited $630,000 with Caribou (the "Caribou Deposit"). The parties dispute whether Defendant retained access and control over these funds after the deposit, with Defendant stating he did have such access and control, and Plaintiff stating he did not. [SMF ¶ 19; Pl.'s Resp. ¶ 19]. Plaintiff asserts that it had no knowledge of Caribou's existence or of Defendant's interest in Caribou at the time Defendant transferred his $630,000.00 distribution to Caribou. [Pl.'s Resp. ¶ 43].

On February 27, 2014[3], Plaintiff filed its "Plaintiff's Motion for Injunctive Relief and Expedited Hearing" (the "Injunctive Motion") in the AA&A Action. [SMF ¶ 20; Pl.'s Resp. ¶ 20]. On February 28, 2014, the court in the AA&A Action entered an order setting the hearing on the Injunctive Motion. *Id.* The order scheduling the Injunctive Motion for hearing also restrained and enjoined Defendant, AA&A, and AA&A, LLC from "transferring, encumbering, selling, concealing, assigning, withdrawing, conveying, gifting, wasting, or otherwise disposing, in any way, any of the certified securities, uncertified securities, or securities entitlements in [the Defendant's] possession or control, related to or held in [AA&A] pending the Court's final

---

[3] The Court notes that this date is after the execution and Effective Date of the Sale Agreement, but before the closing date.

7

disposition of Plaintiff's motion [for injunctive relief]." [SMF ¶ 20; Pl.'s Resp. ¶¶ 20, 34; Pl. Dec. Ex. 5].

Although the AA&A Action was filed to do so, Plaintiff has never levied on Defendant's stock in AA&A. [SMF ¶ 18; Pl.'s Resp. ¶ 18]. Plaintiff asserts that, two days prior to the scheduled March 13, 2014 hearing, the Defendant agreed to voluntarily turn over his stock in AA&A to Plaintiff. [Pl.'s Resp. ¶ 35]. Plaintiff asserts that, on or about March 14, 2014, Piedmont received the stock certificates from Defendant, thereby making Plaintiff the holder of ninety percent (90%) of the stock in AA&A. [Pl.'s Resp. ¶ 36]. A hearing was held on the Injunctive Motion on July 3, 2014. [SMF ¶ 21; Pl.'s Resp. ¶ 21]. After the hearing, on August 7, 2014, the court in the AA&A Action entered a consent order (the "Consent Order on Contempt') agreed to by the parties. [SMF ¶ 21; Pl.'s Resp. ¶¶ 21, 42].

The parties dispute whether Defendant operated AA&A after the sale to H&B. [*Compare* SMF ¶¶ 14-15 *with* Pl.'s Resp. ¶¶ 14-15, 32-33]. Plaintiff alleges that following the purported sale of all of the Acquired Assets by AA&A to H&B, Defendant continued to be employed by AA&A and/or H&B and/or Specialty Cartridge, Inc., an affiliate of H&B. [Pl.'s Resp. at ¶ 32]. Plaintiff further alleges that, following the purported sale of all of the Acquired Assets by AA&A to H&B, the Defendant continued to draw a salary, bonuses, dividends, and/or distributions from AA&A and/or H&B and/or Specialty Cartridge, Inc. [*Id.* at ¶ 33].

Plaintiff asserts that, the Sale Agreement was consummated on or about April 1, 2014, despite Plaintiff being the holder of ninety percent (90%) of the stock in AA&A and without notice to Plaintiff. [*Id.* at ¶ 37]. Plaintiff asserts that the sale of the Acquired Assets caused AA&A's stock to become worthless. [*Id.* at ¶ 38].

8

Pursuant to the Consent Order on Contempt, Defendant made a lump sum payment of $89,000 to Plaintiff. [SMF ¶ 22; Pl.'s Resp. ¶ 22]. Also pursuant to the Consent Order on Contempt, Defendant caused Caribou to transfer $225,000 from the Caribou Deposit into a trust account with Alexander Royston, LLP for the benefit of and payable to Plaintiff. *Id.* Additionally, Defendant paid or caused to be paid from the Caribou Deposit amounts totaling $200,466 to Plaintiff. *Id.*

On August 18, 2014, Plaintiff filed an amended petition in the AA&A Action to add H&B as a defendant and to raise additional claims and causes of action, including counts under Georgia's Uniform Fraudulent Transfer Act. [Pl.'s Resp ¶ 40; Pl. Dec. Ex. 6]. Additionally, Piedmont filed a Third Amended and Restated Petition to add Caribou as a defendant and to add claims and causes of action against Caribou, including claims under Georgia's Uniform Fraudulent Transfer Act. [Pl.'s Resp. ¶ 44; Pl. Dec. Ex. 8]. Plaintiff alleges that, as of the filing of Defendant's chapter 7 bankruptcy petition on May 24, 2016, the AA&A Action was and continues to be pending in the Superior Court of Newton County. [Pl.'s Resp. ¶ 45].

In Count I of the Complaint initiating this adversary proceeding, Plaintiff does not allege that the Note and Guaranty were procured by fraud, false pretenses, or false representations. [SMF ¶ 23; Pl.'s Resp. ¶ 23]. Rather, the basis for the § 523(a)(2)(A) claim is that "Wisner's fraudulent transfer of his assets to Caribou amounts to property being obtained by Wisner by actual fraud under 11 U.S.C. § 523(a)(2)(A)." *Id.*

In Count II of the Complaint initiating this adversary proceeding, Plaintiff does not allege that the Note and Guaranty were procured by an intentional misrepresentation respecting Defendant's financial condition on which Plaintiff relied. [SMF ¶ 24; Pl.'s Resp. ¶ 24]. Rather, the basis for the § 523(a)(2)(B) claim relates to alleged misrepresentations

9

regarding ownership in AA&A and Caribou, all of which occurred after entry of the Final Order in the Superior Court Contract Case. *Id.*

In Count III of the Complaint initiating this adversary proceeding, Plaintiff alleges that Defendant "intentionally and willfully caused injury to AA&A by transferring and allegedly selling all of its assets to [H&B]." [SMF ¶ 25; Pl.'s Resp. ¶ 25]. Plaintiff further alleges that "[v]iolating the superior court's injunction order and wasting stock ownership was wrongful and without just cause and therefore, amounts to a 'malicious' act under 11 U.S.C. § 523(a)(6)." *Id.*

### III. ANALYSIS

In Count I of its Complaint, Plaintiff alleges that a debt owed to it by Defendant is nondischargeable under 11 U.S.C. § 523(a)(2)(A) in accordance with *Husky Int'l Elecs. v. Ritz.* [Doc. 1 at ¶¶ 20-22]; 136 S.Ct. 1581 (2016). In the Motion, Defendant seeks entry of judgment on this claim. [Doc. 31 at 1]. 11 U.S.C. § 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . .
>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A); *see also* 124 Cong. Rec. H11,095–11,096 (daily ed. Sept. 28, 1978) (stating that §§ 523(a)(2)(A) and (a)(2)(B) were intended to be mutually exclusive). False pretenses, a false representation and actual fraud are distinct routes to nondischargeability under this Section.

In *Husky*, the Supreme Court held that "actual fraud" in § 523(a)(2)(A) "encompass[es] fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Husky*, 136 S. Ct. at 1590. *Husky* "resolved a circuit split about whether a

10

fraudulent conveyance could constitute 'actual fraud' under section 523(a)(2)(A), even where no false statements were made or relied upon when the debt was created." *Interamerican Asset Mgmt. Fund Ltd. v. Ortega (In re Ortega),* 573 B.R. 284, 294-95 (Bankr. S.D. Fla. 2017) (quoting *Husky*, 136 S. Ct. at 1586). In addressing Justice Thomas' dissent, the Court noted that "[i]t is of course true that the transferor does not 'obtai[n]' debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can 'obtai[n]' assets 'by' his or her participation in the fraud." *Husky*, 136 S. Ct. at 1589. In *Husky*, the Court left to the lower courts to address the issue whether the transferor, Ritz, incurred a debt in making the transfers stating that,

> Ritz' situation may be unusual in this regard because Husky contends that Ritz was both the transferor and the transferee in his fraudulent conveyance scheme, having transferred Chrysalis assets to other companies he controlled. We take no position on that contention here and leave it to the Fifth Circuit to decide on remand whether the debt to Husky was 'obtained by' Ritz' asset-transfer scheme.

*Id.* at 1589 n.3. The Court, in *Cohen v. De La Cruz*, held that "the phrase 'to the extent obtained by'" in § 523(a)(2)(A) modifies 'money, property, services, or ... credit'"—not "'any debt.'" 523 U.S. 212, 213–14, 118 S. Ct. 1212, 1214 (1998). Thus, a debt must result from the fraudulent transfer and the time of incurring such debt is not limited to the inception of a transaction.

This Court has addressed this issue in two cases: *RES-GA Diamond Meadows, LLC v. Robertson (In re Robertson)*, 576 B.R. 684 (Bankr. N.D. Ga. 2017) (Hagenau, J.) and *Renasant Bank v. Harrell (In re Harrell)*, Adv. Pro. No. 18-5115-BEM, 2019 WL 1490430 (Bankr. N.D. Ga. March 28, 2019). In *Robertson*, Judge Hagenau noted that *Husky* does preserve the possibility that a fraudulent conveyance scheme could give rise to nondischargeability, but such a "scheme in itself is insufficient for a finding of nondischargeability." 576 B.R. at 715. "Rather, section 523(a)(2) is only implicated when a plaintiff can prove that the debt in question

11

was 'obtained by' the fraudulent conveyance scheme." *Id.* Judge Hagenau concluded that the plaintiff in *Robertson* had not linked the alleged actual fraud to its claim as required by *Husky*. *Id.*[4] In *Harrell*, I concluded that the facts presented there were less like *Husky* and more like *Robertson*, because "[Defendant] already owed the money personally and the alleged fraudulent transfer scheme occurred after the debt was incurred." *In re Harrell*, 2019 WL 1490430 at *19.

### A. Count I – § 523(a)(2)(A)

Defendant relies on *Robertson* and *Harrell* to argue that no debt was obtained by the alleged transfers because his debt to Plaintiff occurred long before the alleged transfers and Plaintiff did not allege that the debt was incurred as the result of fraud. In contrast, Plaintiff's Complaint includes the conclusory statement that "[Defendant]'s fraudulent transfer of his assets to Caribou amounts to property being obtained by [Defendant] by actual fraud under 11 U.S.C. § 523(a)(2)(A)," and Plaintiff argues in its brief that the "obtained by" requirement of 523(a)(2) is "broad enough to encompass the fruits of Defendant's [alleged] bad acts…." [Complaint ¶ 22; Doc. 39 p. 8]. Plaintiff argues further that issues of fact remain as follows: (i) whether Defendant's actions to form Caribou and transfer assets to same amounted to a fraudulent scheme to hide his assets for the purpose of avoiding paying Plaintiff's judgment and (ii) whether Defendant's actions to form Caribou and transfer assets to same enabled Defendant to obtain money, property, services or an extension of credit. [Doc. 39 p. 9].

It is undisputed that Defendant's debt to Plaintiff arose under the Guaranty and there was no fraud in the creation of the Note and Guaranty. Rather, as was the case in *Robertson* and *Harrell,* the alleged fraud occurred after the debt was incurred when Defendant allegedly attempted to shield his assets from Plaintiff by transferring them to Caribou. Plaintiff has not

---

[4] Notwithstanding, Judge Hagenau exercised her discretion and denied summary judgment because "the nature of [p]laintiff's claim and the significance of the fraudulent transfers will be taken up at trial anyway…." *In re Robertson*, 576 B.R. at 716. The proceeding settled thereafter.

12

argued that Defendant was the recipient of the transfer, other than to allege in a legal conclusion in the Complaint that "[Defendant]'s fraudulent transfer of his assets to Caribou amounts to property being obtained by [Defendant] by actual fraud under 11 U.S.C. § 523(a)(2)(A)." [Complaint ¶ 22]. Plaintiff does allege that Defendant transferred his own assets to Caribou [Complaint ¶¶ 21, 22] and denies that Defendant had access to the Caribou funds and the ability to withdraw them. [Pl.'s Resp. ¶ 19]. Even assuming the transfer was made with fraudulent intent to shield the funds from Plaintiff, Plaintiff does not assert a claim of veil piercing or otherwise explain how Defendant's liability arises from the transfer to Caribou. Nor does Plaintiff explain what money or property Defendant obtained through the transfer; rather, it is alleged that the $630,000 deposited with Caribou was an asset of Defendant. Thus, Defendant transferred his own money to Caribou and did not obtain any money or property from the transfer. Further, as was the case in *Harrell,* Defendant was personally obligated to Plaintiff prior to the alleged transfers and there is no allegation that could support a finding that a debt was incurred by virtue of the transfer of Defendant's property. As a result, this case is distinguishable from *Husky* in that the transfer to Caribou did not result in Defendant receiving money or property and Defendant did not incur the debt currently owed to Plaintiff thereby. Because, the undisputed material facts with respect to the $630,000 transfer to Caribou, demonstrate that Defendant did not obtain any assets or incur any debt as a result of the transfer, Defendant is entitled to judgment as a matter of law on Count I of the Complaint.

### B. Count II− § 523(a)(2)(B)

Defendant argues that the analysis above applies equally to Count II of the Complaint because the debt itself must have been created or procured by an intentional misrepresentation on which the creditor related and here the alleged offensive conduct occurred

13

after entry of the Final Order. In Count II, Plaintiff alleges that Defendant, (i) denied his ownership in AA&A in his answer in the AA&A Action, (ii) then disclosed his ownership in the Discovery Responses, and (iii) failed to disclose his ownership in Caribou in the Discovery Responses. Plaintiff alleges that these statements satisfy the requirements of § 523(a)(2)(B). That section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— ...
> (B) use of a statement in writing —
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2)(B).

As is the case with its claim under § 523(a)(2)(A), Plaintiff argues that "obtained by" is broad enough to include debts that would have been reduced but for a debtor's material misrepresentations. Plaintiff alleges that Defendant's failure to truthfully answer in the AA&A Action and failure to disclose his ownership of Caribou allowed Defendant "to obtain property as a result of the fraud, to wit: 1) the transfer and alleged sale of AA&A's assets to Hairy & Baxter, LLC and the proceeds thereof; and 2) the transfer of assets to Caribou which Wisner has an interest in." [Complaint ¶ 27]. As the Court has previously noted, Plaintiff has not sought to pierce the corporate veil of AA&A or Caribou, but argues that Defendant as a shareholder of AA&A is liable for a tort – wasting the corporate stock – he caused AA&A to commit by selling its assets and paying Defendant as a shareholder. In response, Defendant argues that Plaintiff's

14

reliance on *Cherry v. Wood*, 204 Ga. App. 833 (1992), is misplaced because that case applies where the officer is liable in tort not to the corporation but to third parties.

The Court need not resolve this issue however, because, even construing these allegations in the light most favorable to Plaintiff, there is no allegation or facts alleged that would support a claim that the failure to disclose ownership of AA&A, in the litigation filed to levy on AA&A stock, created a debt to Plaintiff. Indeed, Plaintiff argues as it did in support of Count I that the obtaining by language in the statute should be construed broadly enough to include the preexisting judgment debt. As a result, the Court cannot conclude that the alleged failure to truthfully answer in the AA&A Action or in the Discovery Responses resulted in a debt owed to Plaintiff. That being the case, Count II fails as a matter of law and Defendant is entitled to judgment as to Count II of the Complaint.

If, as alleged by Plaintiff, Defendant has engaged in a scheme to hinder and/or delay its collection of its debt, the Code provides a remedy for creditors of debtors who have committed such acts. *See* 11 U.S.C. § 727(a)(2). The Court is not willing to expand the ruling in *Husky* to address such alleged bad acts because such an expansion would eliminate the temporal restriction contained in § 727(a)(2) with no indication that Congress intended for such an expansion of 523(a)(2). *See generally*, Norberg, Scott F., Fraudulent Transfers and the Fresh Start in Bankruptcy, 93 Am. Bankr. L. J. 139 (2019). In addition, exceptions to discharge must be liberally construed in favor of the debtor so as not to inhibit the debtor's fresh start, *see Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994), any extension of § 523(a) should be undertaken with reluctance. Thus, I am unwilling to expand *Husky* to address the facts alleged in this proceeding.

15

### C. Count III – § 523(a)(6)

In Count III of the Complaint, Plaintiff seeks to except the debt owed it by Defendant from discharge under 11 U.S.C. §523(a)(6). Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. *See* 11 U.S.C. § 523(a)(6). The Supreme Court has held that § 523(a)(6) covers only "acts done with the actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The Eleventh Circuit has "conclude[d] that a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995); *accord In re Kane*, 755 F.3d at 1295 (quoting *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012)). "[A]lthough *Geiger* suggested a relationship between § 523(a)(6) and intentional torts, the *Geiger* standard is not necessarily satisfied by simply proving the elements of an intentional tort. 'Merely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful.'" *Britt's Home Furnishing, Inc. v. Hollowell (In re Hollowell),* 242 B.R. 541, 544 (Bankr. N.D. Ga. 1999) (quoting *Miller v. J.D. Abrams, Inc.*, 156 F.3d 598, 604 (5th Cir. 1998)). A creditor must also establish malice which requires Plaintiff to show that Defendant's actions were "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Jennings*, 670 F.3d at 1334 (quoting *In re Walker*, 48 F.3d at 1164 (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989))).

The Eleventh Circuit has held that debts arising from a fraudulent transfer judgment can constitute a willful and malicious injury. *In re Jennings*, 670 F.3d 1229 (citing *Murray v. Bammer, (In re Bammer)*, 131 F.3d 788 (9th Cir. 1997) as persuasive authority). In

16

contrast, it is generally held that alleged fraudulent transfers that occur to avoid payment of a judgment not itself the result of a willful and malicious act, do not provide a basis for nondischargeability of the judgment under § 523(a)(6). *BancorpSouth Bank v. Shahid (In re Shahid)* 2016 Bankr. LEXIS 3889*; 2016 WL 11003505 (Bankr. N.D. Fla. Nov. 3, 2016) (citing *In re Best*, 109 Fed Appx. 1 (6th Cir. 2004)); *In re Moore*, 356 F.3d 1125, 112 (10th Cir. 2004); *In re Parks*, 91 Fed. Appx. 817, (4th Cir. 2003); *Cordeiro v. Kirwan (In re Kirwan)*, 558 BR 9, 12 (Bankr. D. Mass. 2016)); *see also Quarre v. Saylor (In re Saylor)*, 108 F.3d 219 (9th Cir. 1996) (claims under state fraudulent transfer law do not constitute debt or property). Because it is undisputed that the underlying judgment was not the result of fraud, but that the alleged fraudulent transfers occurred after the entry of the judgment, the Court will first look to the injury alleged to have been caused and determine if the undisputed or alleged facts could support a claim that Plaintiff or an interest of Plaintiff in property was injured by the transfer(s).

Plaintiff argues that by establishing Caribou and transferring money to Caribou, Defendant injured Plaintiff because it hindered, delayed and reduced amounts Plaintiff could collect on its judgment. Plaintiff argues further that Defendant's actions in selling the assets of AA&A to H&B diminished the value of the company, that the sale diminished the value of the stock which amounted to wasting of the stock, that the Newton County Court so found and that the sale was in violation of the Injunction Order. Finally, Plaintiff argues that the Caribou Deposit constitutes a willful and malicious injury to it or an interest in its property. Defendant argues that Plaintiff had no interest in the Caribou Deposit or AA&A's stock when transfers were made such that it cannot establish injury as required by § 523(a)(6). The Court will first consider what interest Plaintiff may have had in each of the Caribou Deposit and AA&A stock at the time of the transfers.

17

In Georgia "judgments do not automatically attach to choses in action." *Cooper v. Caribou Investments, LLC (In re Wisner)*, Adv. Pro. No. 17-5252, 2018 WL 4808380 at *5 (Bankr. N.D. Ga. Oct. 2, 2018) (Ellis-Monro, J.) (citing O.C.G.A. § 9-13-57). A judgment lien does not attach to money in the possession of a defendant except through a garnishment. *Phillips & Jacobs, Inc. v. Color-Art, Inc.*, 553 F.Supp. 14, 16 (N.D. Ga. 1982).

The undisputed facts establish that Defendant made the Caribou Deposit on February 26, 2014, thus Defendant necessarily received the $630,000 distribution from AA&A on or before that date. Because Plaintiff did not become the majority owner of AA&A until March 14, 2014, it did not have any right to the distribution. Similarly, because Plaintiff had not garnished the funds, it did not have a lien on the Caribou Deposit funds. Therefore, the undisputed facts show that the Caribou Deposit did not injure an interest of Plaintiff.

As is the case for money, "shares of corporate stock, which are choses in action, cannot be subject to levy and sale except by compliance with the legal formula" set forth in state law. *Fourth Nat. Bank v. Swift & Co.*, 160 Ga. 372, 372, 127 S.E. 729, 731 (1925). Thus, as was the case with the Caribou Deposit, the undisputed facts must establish that Plaintiff had an interest in the stock at the time of the sale to H&B.

The undisputed facts establish that Plaintiff had not levied on the AA&A stock at any time prior to Defendant's filing bankruptcy. However, Plaintiff alleges that Defendant turned the AA&A stock over to it on March 14, 2014 such that it became the majority shareholder of AA&A on that date. The parties disagree about when the sale to H&B was consummated such that Plaintiff may have been the majority owner of AA&A at the time of the consummation of the sale and the alleged wasting of the value of the stock. Thus, it is possible that Plaintiff had an interest in property that was injured by the sale such that Defendant's Motion must be denied as

18

to Count III. In addition to the material facts related to the timing of the sale, there are material facts as to Defendant's intent to injure Plaintiff when he undertook to sell the Acquired Assets and whether these actions were without just cause.

### IV. Conclusion

Defendant's debt to Plaintiff is based upon a judgment obtained after a breach of contract – Defendant's guaranty of certain obligations. Defendant did not incur any debt through the transfers made after Plaintiff obtained its judgment and thus, Plaintiff's *Husky* claims under 11 U.S.C. §§ 523(a)(2)(A) and (B) fail as a matter of law. There remain questions of fact regarding Defendant's intent with respect to the sale of AA&A's assets, the timing of such sale and the timing of Plaintiff's alleged ownership of the AA&A stock. As a result, the Motion will be denied as to Count III of the Complaint. Accordingly, it is

ORDERED that Defendant's Motion for Summary Judgment is GRANTED as to Counts I and II of the Complaint; it is further

ORDERED that Defendant's Motion for Summary Judgment is DENIED as to Count III of the Complaint; it is further

ORDERED that the parties shall either submit a status report regarding a continued mediation of this proceeding or submit a consolidated pretrial order within 30 days of entry of this Order.

**END OF ORDER**

## Distribution List

Aaron M. Kappler
Thompson, O'Brien, Kemp & Nasuti, P.C.
Suite 300
40 Technology Parkway South
Peachtree Corners, GA 30092

G. Frank Nason, IV
Lamberth, Cifelli, Ellis & Nason, P.A.
Suite N313
1117 Perimeter Center West
Atlanta, GA 30338-5456

James Daniel Wisner
8231 Turnberry Court
Covington, GA 30014

The Piedmont Bank
c/o Thompson O'Brien Kemp & Nasuti PC
40 Technology Parkway South, Suite 300
Norcross, GA 30092